UNITED STATES DISTRICT COURT
DISTRICT OF MAINE


| IN RE SEACOAST SLEEP         | ) | Magistrate No. 10-111-P-R |
| SOLUTIONS, LLC, et al.       | ) | FILED UNDER SEAL          |

*************************************************************************

| IN RE ATLANTIC MEDICAL       | ) | Magistrate No. 10-114-P-R |
| SUPPLIES, INC.               | ) | FILED UNDER SEAL          |


**MEMORANDUM DECISION AND ORDER
ON MOTIONS FOR APPROVAL OF SEARCH PROCEDURE**

The government seeks an order approving the use of a procedure to cull documents potentially subject to the marital or attorney-client privileges from electronic files seized during a July 1, 2010, execution of two search warrants in Kittery, Maine. *See* Motion for Approval of Search Procedure (Docket No. 10), *In re Seacoast Sleep Solutions, LLC, et al.*, Magistrate No. 10-111-P-R ("*Seacoast*"); (Docket No. 9), *In re Atlantic Medical Supplies, Inc.*, Magistrate No. 10-114-P-R ("*Atlantic*") (together, "Motions"). For the reasons that follow, the Motions are granted.

**I. Factual Background**

On July 1, 2010, federal agents executed search warrants authorizing the seizure of certain records or items of Seacoast Sleep Solutions, LLC, North Star Medical, LLC, and Edelweiss Family Care and Teleheath, LLC, for the period from January 1, 2006, to the present, from those companies' premises and from the second-story storage areas of Atlantic Medical Supplies, Inc., in Kittery, Maine. *See* Search and Seizure Warrants (Docket No. 4), *Seacoast*; (Docket No. 3), *Atlantic*.

1

Agents seized both paper records and mirror images of computer systems. *See* Motions at 1; Joint Response to Motion for Approval of Search Procedure (Docket No. 12), *Seacoast*; (Docket No. 11), *Atlantic* (together, "Response"), at 2. Shortly after the execution of the warrants, counsel representing the targeted companies, as well as interested parties Dr. Eva Enzinger and Peter Enzinger, contacted the Assistant United States Attorney assigned to the case (the "case AUSA") and informed him that the documents seized included materials subject to both the attorney-client and marital privileges. *See* Exhs. 1-2 to Response.[1] They requested that these documents not be examined by government investigators. *See id*. The case AUSA agreed to delay examination of documents or items that might contain privileged information until he had an opportunity to confer with Seacoast counsel.

On or before July 15, 2010, the case AUSA informed Seacoast counsel that documents had been seized that were outside the scope of the search warrant. *See* Exh. 3 to Response. Seacoast counsel demanded those documents' immediate return. *See id*. The case AUSA explained that among documents seized were some dated prior to January 1, 2006, that were commingled in boxes and/or files with other documents dated after January 1, 2006. *See* Exh. 4 to Response. He stated that as investigators processed seized paper documents, those dated prior to January 1, 2006, would be separated and returned to Seacoast counsel. *See id*. He estimated that, because of the volume of documents seized, that process would take several weeks. *See id*.

By letters dated July 16, 2010, and August 4, 2010, Seacoast counsel informed the case AUSA that agents had taken records and documents of several entities not named in the warrant, Edelweiss, LLC, Little Explorers Nature and Learning Center, and Jennifer Nelson, Nurse Practitioner. *See* Exhs. 5, 9 to Response. They demanded these documents' immediate return.

---

[1] For ease of reference, I shall refer to the Enzingers and/or related companies as the "Seacoast interests" and to counsel for any or all of those individuals or companies as "Seacoast counsel."

*See id.* Seacoast counsel also noted that agents may have seized personal communications of the Enzingers, demanding the return of those documents to the extent outside the scope of the warrant. *See id.* The case AUSA indicated that, as the government continued to process paper documents, it would set aside and return, on a rolling basis, documents outside the scope of the warrant. *See* Exhs. 6-7 to Response.

By letter dated July 21, 2010, the case AUSA informed Seacoast counsel of an incident in which paper documents outside the scope of the warrant had been scanned. *See* Exh. 8 to Response.[2] He represented that the scanned versions of those records had been deleted from the government computer systems, and the original paper records would be returned to counsel. *See id.*

## II. Discussion

The government moves for approval of a "taint team" search procedure substantially similar to that recently approved by this court in *United States v. Taylor*, Criminal No. 10-86-P-H, 2010 WL 2924414 (D. Me. July 16, 2010). *See* Motions at 2. The proposed procedure calls for a "filter agent," who has not been, and will not be, involved in prosecution of the instant matter, to search the imaged computer files with the aid of a forensic computer examiner. *See id.* at 3, ¶ 3. The filter agent, with the aid of a "filter AUSA" who has not been and will not be involved in prosecution of the instant matter, would determine whether any of the electronic files are privileged or potentially privileged and arguably subject to an exception to the privilege. *See id.* at 3, ¶ 4. Documents deemed privileged or potentially privileged would be produced to the

---

[2] The case AUSA stated that, soon after execution of the search warrants, Seacoast counsel requested copies of the contents of a certain box and folder identified as essential to their clients' continued business operation. *See* Exh. 8 to Response. The items were scanned in order to produce copies to counsel on a disk. *See id.* As agents reviewed the documents contained in that production to counsel, they determined that some of them either pre-dated January 1, 2006, or were personal records. *See id.*

3

Seacoast interests. *See id*. at 4, ¶ 6. Documents deemed not to be privileged or to be subject to an exception to a privilege would be described in a log supplied to the Seacoast interests. *See id*. The Seacoast interests would be afforded an opportunity to object to these determinations prior to the release of any of those materials to case agents or the case AUSA. *See id*. at 4, ¶¶ 6-8.

The government notes that the forensic computer examiner has advised the case AUSA that some documents may exist in more than one location on a computer. *See id*. at 4 n.3. It states that it will make "[b]est efforts . . . to make sure no copies of any privileged document are placed on the computer server available to the investigative team" and that, "[t]o the extent any privileged documents are located after the taint review, they will be separated and produced to Seacoast et al." *Id*.

The government clarifies that its motion specifically focuses on electronic records. *See id*. at 1 n.1.[3] It also states that the motion addresses potentially privileged documents rather than documents that might be outside of the scope of the warrant. *See id*. at 2 n.2. It states that records outside of the scope of the warrant will be separated during review by the case agent(s) after the privilege review is complete. *See id*.

The Seacoast interests object to the proposed taint team procedure, requesting that a neutral magistrate judge or special master selected by the court, rather than government agents and employees, conduct the preliminary review of materials seized during the execution of the two warrants. *See* Response at 1. In the alternative, they request that the taint team procedure be modified to require the taint team to cull materials beyond the scope of the search warrant as well as privileged documents. *See id*.

---

[3] The government does propose to submit some paper documents that appear to be legal bills, which it has placed in a sealed envelope, to the filter AUSA to determine whether they are in fact privileged. *See* Motions at 1 n.1. If they are determined to be privileged, they would be returned to Seacoast counsel. *See id.*

4

### A. Request for Appointment of Magistrate Judge or Special Master

As the Seacoast interests point out, *see id.* at 4, the United States District Court for the District of Columbia has catalogued three instances in which courts, which have expressed mixed views on government taint teams, are more willing to approve their use: (i) "in limited, exigent circumstances in which government officials have already obtained the physical control of potentially privileged documents[,]" (ii) "when the lawfulness of the acquisition of the documents to be reviewed was not initially challenged[,]" and (iii) "when there is a more extensive number of documents at issue[,]" *United States v. Jackson*, Criminal Action No. 07-0035(RWR), 2007 WL 3230140, at *5 (D.D.C. Oct. 30, 2007) (citations and internal quotation marks omitted). The *Jackson* court observed that, in addition, "courts have given at least some consideration to the taint team's effect on the appearance of fairness." *Id*. (citation and internal quotation marks omitted).

The Seacoast interests argue that:

1  In this case, there is no exigency because the type of investigation at issue takes months, if not years, and a special master or magistrate judge could conduct the review just as quickly as could government employees. *See* Response at 5.

2.  They have challenged the lawfulness of the acquisition of the documents to be reviewed, having promptly demanded that documents beyond the scope of the warrants, as well as privileged documents, be returned. *See id*. They believe that there may be grounds to suppress the evidence seized pursuant to the warrants, and have filed motions to unseal the applications and affidavits supporting them. *See id*.

3.  The interests of fairness are better served by the appointment of a neutral reviewer, particularly given that (i) the filter agent and filter AUSA work in close physical

5

proximity to the case agents and case AUSA, increasing the chances of mistaken or inadvertent disclosure, *see id*. at 5-6, (ii) the government has promised only that it will make its "[b]est efforts" to ensure that no copies of any privileged documents are placed on the computer server available to the investigative team, *see id*. at 6, (iii) the risk of harm is more than theoretical, documents having already been erroneously scanned into government computers, *see id*., and (iv) the government has failed to identify the proposed taint agent, the agency for which that person works, the agent's pertinent training regarding the scope of privileges, or the means by which the taint agent will be screened from the case agent and his/her support personnel, *see id*.

I conclude that the proposed taint team procedure is appropriate in the circumstances. First, the caselaw indicates that the fact of the government's possession of potentially privileged documents, rather than the expected length of its investigation, creates the exigency in which the use of a taint team furthers, rather than undermines, the protection of any privilege. *See, e.g., In re Grand Jury Subpoenas*, 454 F.3d 511, 522-23 (6th Cir. 2006) ("[G]overnment taint teams seem to be used primarily in limited, exigent circumstances in which government officials have already obtained the physical control of potentially-privileged documents through the exercise of a search warrant. In such cases, the potentially-privileged documents are already in the government's possession, and so the use of the taint team to sift the wheat from the chaff constitutes an action respectful of, rather than injurious to, the protection of privilege."); *compare, e.g., Jackson*, 2007 WL 3230140, at *6 (declining to approve taint team procedure in part because "[t]he government has yet to obtain control of the potentially privileged documents, unlike the 'limited, exigent circumstances' described in *In re Grand Jury Subpoenas*").

Second, the quantity of material stored in the imaged computer systems is voluminous. *See* Response at 6; Government's Reply to Opposition to Approval of Search Procedure (Docket

6

No. 14), *Seacoast*; (Docket No. 13), *Atlantic* (together, "Reply"), at 1. This weighs in favor of the use of the proposed taint team procedure. *See, e.g., Hicks v. Bush,* 452 F. Supp.2d 88, 103 & n.12 (D.D.C. 2006) (approving government filter team, and declining to appoint special master, in part because of volume of materials to be reviewed; noting, "Special masters are usually appointed when the materials for review are not voluminous, and therefore are less useful in cases involving significant problems with time, manpower and multiple languages.") (citations and internal quotation marks omitted); *United States v. Grant*, No. 04 CR 207BSJ, 2004 WL 1171258, at *3 (S.D.N.Y. May 25, 2004) ("Although in this case there is not an extensive number of documents at issue, the Court is also mindful of the burden that magistrates and district court judges would face if they were to routinely review lawfully-seized documents in every criminal case in which a claim of privilege was asserted. Permitting the Government's privilege team to conduct an initial review of the documents will narrow the disputes to be adjudicated and eliminate the time required to review the rulings of the special master or magistrate judge, thus reducing the possibility of delay in the criminal proceedings.") (citation omitted).

Third, while the Seacoast interests have (i) demanded the return of certain documents and (ii) seek to unseal the applications and affidavits underlying the search warrants to test their validity and scope, *see* Joint Motion To Unseal the Applications and Affidavits Submitted in Support of the Search Warrants (Docket No. 8), *Seacoast*; (Docket No. 7), *Atlantic*, at 3, this factor does not weigh strongly in favor of the appointment of a magistrate judge or special master in the circumstances of this case. The government has not contested that the Seacoast interests are entitled to the return of documents that are either outside of the scope of the search warrants or privileged. And, while the Seacoast interests may ultimately decide to challenge the

validity of underlying searches and/or seizures, the outcome of any such challenge is far from clear.[4]

Finally, the government's proposed taint team procedure employs sufficient safeguards so as not to appear unfair or likely to result in unfairness. While the government has not identified the filter agent or the filter AUSA, it has pledged that both will be individuals who have not been, and will not be, involved in the prosecution of this matter. The filter agent will have the benefit of the training and experience of the filter AUSA in determining whether documents are privileged or potentially privileged, and whether an exception to the privilege applies. The Seacoast interests will have the benefit not only of the document log created by the government but also of access to the computer systems in question in deciding whether to challenge any determinations made.[5] The single incident in which the government scanned paper documents outside of the scope of the warrant does not undermine confidence in the appearance of fairness of the proposed taint team procedure. The government itself disclosed this incident to Seacoast counsel, explaining that it scanned certain boxes of paper documents in response to their request for immediate access to them. *See* Exh. 8 to Response. Upon examining the contents of those boxes, case agents discovered that documents outside of the scope of the warrants were commingled with others within their scope. *See id.* The government

---

[4] The Seacoast interests contend that their case is distinguishable from cases approving of government taint teams in which defendants failed to challenge initial seizures, such as *United States v. Neill*, 952 F. Supp. 834, 837 n.4 (D.D.C. 1997), and *United States v. Winters*, No. 06 CR. 54 SWK, 2006 WL 2789864, at *2 (S.D.N.Y. Sept. 27, 2006). *See* Response at 5. The court in *Neill* did not approve a taint team procedure. Rather, it held that, although the government's decision to invoke a taint team procedure was a *per se* intentional intrusion on the defendants' attorney-client privilege, the government successfully rebutted the presumption of harm arising from its decision to employ that procedure. *See Neill*, 952 F. Supp. at 840-41. In that context, the court noted that no litigation directly resulted from the taint team's review. *See id*. at 837 n.4. While, in *Winters,* the lack of any challenge to the lawfulness of a search warrant and the manner of its execution did weigh in favor of approval of a taint team procedure, *see Winters*, 2006 WL 2789864, at *2, I do not read *Winters* to suggest that the *prospect* of such a challenge weighs against such approval.

[5] The government points out that, when it made mirror images of the computer systems, the original systems remained on site and, thus, the Seacoast interests retain access to the files within them. *See* Reply at 2 n.2.

deleted scanned documents outside of the scope of the warrant, immediately notified Seacoast counsel of what had transpired, and promised to return the original paper documents. *See id*.

Moreover, as the Seacoast interests themselves note, they are not without recourse should the taint team system fail to shield case agents or case AUSAs from privileged materials. Should that occur, they "reserve their right to seek appropriate relief, including disqualification of counsel from the case, quashing any subpoenas that are issued either directly or indirectly as a result of such improper exposure, and dismissal of some or all of the charges, if any are ever brought." Response at 7.

**B. Request That Taint Team Screen for Documents Outside the Scope of the Warrant**

In the alternative, the Seacoast interests request that, if the taint team procedure is to be adopted, the taint team, rather than case agents, screen electronic files for documents falling outside the scope of the warrant. *See id*. at 7-10. They reason that the review proposed by the government is nothing more than a forbidden "general search," that it would be unfair and highly prejudicial to permit case agents to review records that they have no lawful authority to read or inspect, and that, while agents executing a search warrant must preliminarily review documents to ascertain whether they fall within the scope of the warrant, any such exigency now has ended. *See id*.

Absent flagrant disregard for the limitations of a search warrant, agents' seizure of some items not covered by a search warrant and their election to cull such items later rather than on-site do not constitute an impermissible "general search" invalidating a search and seizure. *See, e.g., United States v. Henson*, 848 F.2d 1374, 1383-84 (6th Cir. 1988); *In re Designer Sportswear, Inc.*, 521 F. Supp. 434, 437 (S.D.N.Y. 1981). The government represents that, in this case, paper documents seized by agents that were outside the scope of the warrant were, in

9

general, commingled with documents within the scope of the warrants, and that they comprised a small percentage of total paper documents seized. *See* Reply at 3 n.3. That is not the sort of circumstance in which agents' post-seizure culling of documents outside the scope of a search warrant raises "general search" concerns. *See, e.g., id*.

Moreover, the Seacoast interests cite no authority for the proposition that the government should be required to employ a different screening technique for electronic records than it has employed for paper documents or that taint teams employed for the purpose of screening out privileged documents also need screen for documents outside the scope of a search warrant. In the absence of such authority, I decline to obligate the government to do so.

The Motion accordingly is **GRANTED**, and the government's proposed procedure is approved, with some modifications, as follows:

1. The government will ask counsel known to have represented the Seacoast interests to provide search terms to be used to help locate potentially privileged records, as well as the locations of any computer folders or directories in which such communications are stored, to enable the filter team to perform a broad search of the imaged computers and a targeted search of specific files and folders. The government will ask that such information be provided within seven calendar days of the date of this order and will refrain from conducting any computer searches until after this seven-day period expires.

2. The imaged computer files will be uploaded into a searchable database to facilitate review.

3. The government's filter agent, who has not been, and will not be, involved in the prosecution of the instant matter, will review the imaged computer files with the assistance of a forensic computer examiner. The filter agent and the forensic computer examiner will use the

search terms and folder locations provided by Seacoast counsel, as well as any other search terms identified by the filter agent, to identify potentially privileged documents. The forensic computer examiner will not be involved in the review of any documents, but rather only in performing the searches to locate and collate potentially privileged documents. Following the taint-review process, the forensic computer examiner will separate privileged documents from the database made accessible to the investigative team.

4. The government will assign a filter AUSA who has not been, and will not be, involved in prosecution of the instant matter, with whom the filter agent can discuss any issues that may arise and to whom the filter agent may forward documents that the filter agent has determined may contain arguably privileged information.

5. Following the taint review process, the forensic computer examiner will separate privileged documents from the database made accessible to the investigative team. The taint agent shall maintain a log detailing the disposition of each document in question.

6. The filter agent shall produce, to the Seacoast interests, a copy of a disk containing all materials that the filter agent has identified or determined to be potentially privileged. The filter agent also will notify them whether any of these documents have been determined by the filter AUSA not to be privileged or to be subject to an exception to application of the privilege. With respect to those documents that the government has deemed not to be covered by the privilege or to be subject to an exception to the privilege, if any exist, the filter agent and/or filter AUSA shall supply to the Seacoast interests a log describing any such document by date, sender, recipient, and subject matter, sufficient to enable the Seacoast interests to assess the government's determination. The Seacoast interests, or any of them, may

challenge any such determination by motion filed with the court within 10 days of receipt of said log.

7. Only those materials not filtered out, and not containing privileged or arguably privileged materials, will be placed on a computer server available to the case agent or the case AUSA.

8. No arguably privileged materials shall be sent to the case agent or the case AUSA unless and until (i) the Seacoast interests, or any of them, fail to object, within 10 days of their receipt of the government's log, to the government's determination that the material in question is non-privileged or is subject to an exception to the privilege, or (ii) upon a timely objection by the Seacoast interests, or any of them, the court rules that the material in question is non-privileged or is subject to an exception to the privilege.

9. The court's approval of the filter process does not foreclose the Seacoast interests, or any of them, from filing a motion to suppress bearing on the materials in question.

### III. Sealing of This Decision

I **DIRECT** the Clerk of the Court to seal this Memorandum Decision and Order when docketed. The parties shall notify me by noon on Monday, September 27, 2010, with due regard to the public's interest in access to court proceedings, whether there is any reason that this Decision and Order should remain sealed. Any party taking the view that this Decision and Order may be unsealed with redactions shall indicate explicitly what language is proposed to be redacted, and why. If I do not hear from the parties by noon on Monday, September 27, 2010, this Decision and Order will be unsealed.

***SO ORDERED***.

## NOTICE

*In accordance with Federal Rule of Criminal Procedure 59(a), a party may serve and file an objection to this order within fourteen (14) days after being served with a copy thereof.*

*Failure to file a timely objection shall constitute a waiver of the right to review by the district court and to appeal the district court's order.*

Dated this 22nd day of September, 2010.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge